IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CARMEN MANZANEDA,           )
                            )
        Plaintiff,           )
                            )
v.                           )  1:16-cv-1216 (LMB/JFA)
                            )
SETERUS, INC., et al.,       )
                            )
        Defendants.          )

## MEMORANDUM OPINION

Before the Court are Motions to Dismiss by defendants Samuel I. White, P.C. ("SIWPC") and Seterus, Inc. ("Seterus"). Plaintiff pro se Carmen Manzaneda ("plaintiff" or "Manzaneda") has responded to SIWPC's motion, which was filed on February 15, 2017. Seterus, which was not served until March 31, 2017, filed its motion to dismiss, including a proper Roseboro notice, on May 4, 2017, which adopts the same arguments as SIWPC's motion. On May 23, 2017, plaintiff responded to Seterus' motion.[1] For the reasons that follow, both motions to dismiss will be granted.

I. BACKGROUND

On March 7, 2007, plaintiff executed a deed of trust and note to secure a $350,000 mortgage loan from Mortgagestar, Inc. ("Mortgagestar"), to finance her purchase of property located at 2268 Wheelwright Court in Reston, Virginia ("the Property"). Compl. Ex. A, [Dkt. 1-1] at 10. The note was an "Interest Only Fixed Rate Note," under which plaintiff was to pay interest only, at a yearly rate of 7%, for the first 120 months. [Dkt. 29-1] at 31. The Mortgage

---

[1] These filings, an "Affidavit" and Memorandum in Support, did not raise any new arguments.

Electronic Registration Systems, Inc. ("MERS") acted as Mortgagestar's nominee. Thomas J. Salen ("Salen") was named as the original trustee for the Deed of Trust. Compl., [Dkt. 1] at 2.

On October 6, 2011, MERS assigned the loan to Bank of America, N.A. ("BoA"), which appointed defendant SIWPC as substitute trustee on June 14, 2013. Compl. Ex. A, [Dkt. 1-1] at 8–9. On July 17, 2015, BoA assigned the loan to the Federal National Mortgage Association ("Fannie Mae"), which appointed defendant Seterus as the servicer of the loan. Id. at 10. According to Seterus' records, plaintiff has been "contractually delinquent" on all payment installments since February 1, 2008. Compl. Ex. A, [Dkt. 1-1] at 26.

Sometime in October 2015, plaintiff contacted Seterus to ask about the status of her loan, among other questions.[2] See Compl. Ex. A, [Dkt. 1-1] at 17. On October 24, 2015, Seterus responded that they were reviewing the request and would respond shortly. Id. While that request was pending, on October 30, 2015, Seterus sent plaintiff an updated account statement stating that the amount required to pay off her loan was $629,675.24. Id. at 19. Seterus directly responded to plaintiff's inquiries on December 1, 2015, explaining the series of assignments that led to Fannie Mae's ownership of the loan and enclosing a variety of documents that BoA sent to Seterus in connection with the most recent transfer. Id. at 26–27.

On February 18, 2016, SIWPC sent plaintiff a notice on behalf of Fannie Mae stating: "You have defaulted under the terms of the deed of trust by failing to make timely monthly payments. As a result, upon the expiration of fourteen (14) days from the date of mailing this notice, the Trustee, or Substitute Trustee, will be requested to schedule the sale of the secured property." Compl. Ex. A, [Dkt. 1-1] at 30.

---

[2] Plaintiff's letter is not in the record, but Seterus' response indicated that it included at least 35 separate inquiries. Compl. Ex. A, [Dkt. 1-1] at 28.

2

On September 6, 2016, SIWPC sent plaintiff a notice that her Property would be sold on September 26, 2016. Compl. Ex. A, [Dkt. 1-1] at 5–7. In response, plaintiff sent a flurry of correspondence on September 20, 2016. First, she sent a notice of dispute to Seterus and SIWPC, asking those entities to "validate" their interest in her loan and challenging their ability to contact her and use her banking, credit, and financial information. Id. at 2. Second, she sent Fannie Mae a letter asking whether Fannie Mae had the promissory note she had executed in connection with the mortgage and whether MERS had ever had "control or custody of both the trust deed and note." Id. at 3. Finally, she sent Salen, the original trustee, a letter asking whether he had transferred his authority as trustee to SIWPC. Id. at 4.

Plaintiff's letter to Seterus and SIWPC included a QR code, an image that can be scanned by a mobile phone to send the phone's user to an associated website. Compl. Ex. A, [Dkt. 1-1] at 2. The QR code on plaintiff's letter links to "protestinginthestreetisforfools.wordpress.com/data-retention-license," which hosts a document entitled "Data Retention License" ("DRL"), which is attached as Exhibit B to the Complaint. The DRL begins: "Please be advised that upon receiving notification of the QR code for the following content and license terms, you are subject to the terms and conditions set forth herein." Compl. Ex. B, [Dkt. 1-2] at 1. The substance of the putative agreement is set out as follows:

> You agree that upon the moment of disclosure of my identifying information to you, or the moment you obtain my identifying information, whether with or without my consent, that you are in sole custody and control of my identifying information and that these terms apply. This agreement is perpetual and shall continue in perpetuity. If this agreement conflicts with any of your policies, the terms of this agreement shall be controlling and notwithstanding any of your policies or previous agreements, terms or conditions [sic].

Id. at 2. Although there is no indication that Seterus or SIWPC ever solicited or responded to the DRL, Plaintiff alleges that it is valid and enforceable. Compl., [Dkt. 1] at 13–15.

3

On September 29, 2016, Seterus replied to plaintiff's September 26 letter, stating that a full "written explanation" was forthcoming, alerting her that the owner of her loan was Fannie Mae, and giving her Fannie Mae's address. [Dkt. 29-1] at 1. On October 17, 2016, SIWPC responded to plaintiff, explaining that it had forwarded her letter to Seterus, which would "address any issues raised therein." [Dkt. 19]. On October 27, 2016, Seterus sent a more detailed letter to plaintiff, explaining what steps she needed to take if she "intend[ed] to keep the property," including establishing an escrow account to cover taxes and insurance. [Dkt. 29-1] at 2. Seterus' October 27 letter also included a complete list of the documents it needed to evaluate any request by plaintiff to keep the property, and included a notice reminding plaintiff that Fannie Mae owned her loan. Id. at 3, 5. Seterus sent another letter on November 3, 2016, reiterating that Fannie Mae was then the owner of the loan and enclosing documentation of all the transfers in ownership that her loan had undergone dating back to Mortgagestar. [Dkt. 29-1] at 15.

Plaintiff filed her complaint on September 26, 2016. Counts 1 and 2 allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., against each defendant, and Counts 3 and 4 allege breach of contract against each defendant for breaching the DRL. Plaintiff seeks actual and statutory damages for the FDCPA violations and, on the breach of contract claims, "liquidated damages in the amount of 2.46 ounces of gold (Au) per diem beginning on December 21, 2015, or its equivalent in Bitcoin (XBT), plus court costs, attorney fees and for other relief as the court deems appropriate." Compl., [Dkt. 1] at 16.

## II. DISCUSSION

### A. <u>Standard of Review</u>

According to Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must set forth sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007)). The Court must "assume that the facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor," <u>Burbach Broad. Co. of Del. v. Elkins Radio Corp.</u>, 278 F.3d 401, 406 (4th Cir. 2002), but only to the extent that those allegations pertain to facts rather than to legal conclusions. <u>Iqbal</u>, 555 U.S. at 678.

When the complaint is filed by a <u>pro se</u> plaintiff, pleadings are "to be liberally construed." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). Nevertheless, it must comply with proper pleading rules and allege a factual basis for relief. <u>See</u> <u>Giarratono v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (stating that a <u>pro se</u> complaint must still provide "more than labels and conclusions" (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted)); <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view . . . <u>pro se</u> complaints does not transform the court into an advocate[.]").

When evaluating a motion to dismiss under Rule 12(b)(6), the court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" in addition to the allegations on the face of the complaint. <u>Moore v. Flagstar Bank</u>, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (internal citation omitted). Even a document that

is not attached to the complaint can be considered along with a motion to dismiss "when the document is integral to and explicitly relied on in the complaint," and when the plaintiff does not dispute the document's authenticity. Zak v. Chelsea Therapeutics Intern., Ltd., 780 F.3d 597, 606–07 (4th Cir. 2015). "In the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

### B. Counts 1 and 2: FDCPA Violations

To adequately plead a FDCPA claim, a plaintiff must allege that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a [debt] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Dikun v. Streich, 369 F. Supp. 2d 781, 784–85 (E.D. Va. 2005) (internal quotation marks and citation omitted).

Three provisions of the FDCPA are relevant to plaintiff's claims. First, the FDCPA prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). Second, debt collectors are prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Third, if a consumer has been contacted by a debt collector seeking to collect a debt, and the "consumer notifies the debt collector in writing within [a] thirty-day period . . . that the debt . . . is disputed . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of the judgment, or the name and address of the original creditor, and a copy of

such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

Plaintiff repeatedly argues that defendants had no legal right to foreclose on the property, because either the substitution of the trustee was invalid or SIWPC was obligated to present the original note that plaintiff executed with Mortgagestar. Compl. Compl. 3–12. Plaintiff is mistaken. As an initial matter, plaintiff's exhibits make it clear that only SIWPC is attempting to foreclose, not Seterus, meaning this claim cannot apply to Seterus. See [Dkt. 1-1] at 5. As for SIWPC, it is well established that Virginia law authorizes a noteholder to appoint a substitute trustee. Hien Pham v. Bank of New York, 856 F. Supp. 2d 804, 813 (E.D. Va. 2012). As Exhibit A to the complaint demonstrates, BoA was the noteholder at the time it appointed SIWPC as substitute trustee, [Dkt. 1-1] at 8–9, meaning that the appointment was valid.[3]

SIWPC's authority to foreclose in its capacity as substitute trustee is similarly well-established. As this court has held:

> [J]ust as a noteholder is not "required to come to a court of law and prove its authority or standing to foreclose on a secured property," so too a nominal beneficiary or a substitute trustee, for the same reason, should not be required to prove in court that it had the noteholder's authority. To conclude otherwise would allow borrowers to compel judicial intervention in any foreclosure proceeding where a deed of trust has changed hands or a substitute trustee has been appointed. This result would be plainly contrary to Virginia law, which allows a trustee to foreclose on a loan in default, even if the original note cannot be found, without first seeking a court order.

---

[3] Plaintiff claims that the BoA officials who signed the appointment of SIWPC and the assignment of the loan to Fannie Mae are not truly BoA employees, Compl. 9, 11, but this claim is purely speculative and is not sufficiently supported by factual allegations to survive a motion to dismiss. See Pham, 856 F. Supp. 2d at 813 ("[N]o factual allegation or record evidence supports plaintiff's speculative assertion that certain documents in the record are signed by individuals lacking authority to do so.").

7

Pham, 856 F. Supp. 2d at 810 (internal citation omitted). Because SIWPC was a duly appointed substitute trustee, it has the legal authority to foreclose on the Property. Id. at 815.

Plaintiff also alleges a series of false or misleading representations by SIWPC and Seterus, including: (1) falsely representing that they had a right to foreclose; (2) "utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiff's promissory note;" (3) using a false name for its debt collection practices; and (4) falsely representing the name of the creditor to whom the debt is owed. Compl. 3–12.

Plaintiff's claims of false or misleading representations must be dismissed because the documents plaintiff has attached to the complaint demonstrate that the statements at issue are neither false nor misleading. As discussed above, SIWPC, as substitute trustee for noteholder Fannie Mae, was authorized to initiate foreclosure proceedings in light of plaintiff's default. All of the communications from the defendants attached to the complaint accurately identify the defendants and correctly represent SIWPC's role as substitute trustee and Seterus' role as servicer. See generally Compl. Ex. A, [Dkt. 1-1]. Moreover, Exhibit A establishes that plaintiff's promissory note was not "illicitly-obtained," but rather procured by Fannie Mae through an ordinary and documented assignment process. Id. at 10. Accordingly, the claims of false or misleading statements lack merit.

Plaintiff further alleges that the defendants did not properly respond to her request for validation as required by 15 U.S.C. § 1692g(b).[4] This claim, too, is belied by documents

---

[4] In the complaint, plaintiff includes a conclusory allegation that the defendants "failed to provide the Plaintiff with validation of debt within five business days of contacting him [sic]," which would violate 15 U.S.C. § 1692g(a). Compl. 6, 12. Plaintiff has not pleaded any facts

8

provided by the defendants in connection with their motions to dismiss. These documents, which are responses to plaintiff's September 20, 2016 letter, are appropriately considered on a motion to dismiss because they are "integral" to plaintiff's complaint. See Zak, 780 F.3d at 606–07. To state a claim under § 1692g(b), it is essential for plaintiff to adequately plead that the defendants did not appropriately respond to her request for information. Accordingly, the Court may consider any responses that the defendants actually sent to evaluate the plausibility of her claim under Twombly and Iqbal.[5]

Here, the responses demonstrate that the defendants complied with § 1692g(b)'s requirement that plaintiff be provided with the "name and address of the original creditor." In particular, SIWPC's October 17 letter indicated that Seterus would respond on its behalf. Seterus' November 3 letter made good on that representation by attaching a copy of the original deed of trust, which named Mortgagestar as the original creditor and gave its address in Bethesda, Maryland. [Dkt. 29-1] at 35. Accordingly, SIWPC and Seterus complied with § 1692g(b)'s requirement that they provide plaintiff with the name and address of her original creditor in response to her dispute of the debt.[6]

Finally plaintiff has claimed that the defendants have "been employing a complex scheme, including what has become known recently as 'securitization,' and then assignments, trusteeships and other counter parties or affiliates such as 'serving agents' to obscure who

---

that would support this contention, such as the date on which the defendants first contacted her, see id.; therefore, this claim will be dismissed.

[5] In her "Affidavit in Response to Motion to Dismiss," Plaintiff also conclusorily denies the authenticity of "a purported note and mortgage." Pl. Aff., [Dkt. 14] at 5. Even if this statement were construed as denying the authenticity of these letters, the denial is not supported by any factual allegations in the complaint and therefore cannot be used to defeat the motions to dismiss.

[6] And, of course, plaintiff received at least four letters informing her that Fannie Mae was the current owner of her mortgage. Compl. Ex. A, [Dkt. 1-1] at 30; [Dkt. 29-1] at 1, 5, 15.

initially received the money," and that "the parties involved have been compensated in a list of different ways from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including judges and attorneys and clerks of the court," and that "all of these steps have been undertaken in a very complex, obscure and indirect way." Compl. 4, 10. Even if these allegations were true, plaintiff has not identified, and the Court is not aware of, any provision of the FDCPA that would be violated by this conduct.[7] Moreover, plaintiff's speculation that her mortgage is in some way connected to the pension fund of this court or other governmental entities is patently incredible and therefore does not survive under the plausibility standard set by Twombly and Iqbal.

Because plaintiff has failed to plead facts adequate to support any of her FDCPA claims, dismissal is appropriate as to Counts 1 and 2.

### C. Counts 3 and 4: Breach of Contract

Plaintiff argues that defendants breached the DRL by using her personal information without complying with its terms. Defendants respond that they are not bound by the DRL.

For a contract to exist, there must be an offer and acceptance of that offer. Bernstein v. Bord, 146 Va. 670, 675 (1926). "[A]ssent need not be given in express words, but may be inferred from the acts and conduct of the offeree." Id.

Here, plaintiff has alleged no words, acts, or conduct indicating that defendants accepted plaintiff's DRL. Although plaintiff sent defendants a QR code linked to the DRL, there is no evidence that SIWPC or Seterus ever actually read it, much less manifested intent to be bound by

---

[7] To the extent that concealing the identity of the true creditor would violate the FDCPA, the documents attached to the complained demonstrate that plaintiff has repeatedly been apprised that Fannie Mae is the current owner of her loan and Mortgagestar was the original creditor.

it. Plaintiff argues that the defendants' failure to "opt out" under the terms of the DRL means that it binds them, but the law does require an offeree to opt out of an arrangement if the offeree has not first manifested intent to be bound by it. See Bernstein, 146 Va. at 675. Accordingly, plaintiff has not adequately alleged the existence of a contract and her breach of contract claims fail.

III. CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 24 day of May, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge